Filed 2/27/23  In re L.S. CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| In re L.S., et al., Persons Coming Under the Juvenile Court Law. | B318149, B315613, B315631 |
| | (Los Angeles County Super. Ct. Nos. DK10350, 18LJJP00684) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Petitioner and Respondent,<br><br>    v.<br><br>JESSICA D. et al.,<br><br>        Objectors and Appellants. | |

APPEALS from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore. Affirmed.

Jill Smith, under appointment by the Court of Appeal, for Objector and Appellant Jessica D.

Christopher R. Booth, under appointment by the Court of Appeal, for Objector and Appellant Victor S.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Sally Son, Deputy County Counsel, for Petitioner and Respondent.

_____

On September 8, 2021, the juvenile court denied Welfare and Institutions Code[1] section 388 petitions by Jessica D. (mother) concerning her three children. On January 27, 2022, the court terminated the parental rights of mother and Victor S. (father) to the eldest of the children. In three appeals, mother challenges these rulings, joined by father as to the last ruling.

The parents raise a single issue on appeal: whether the trial court erred when it found the Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) did not apply to the children even though no inquiry was made of all available members of mother's extended family about their Native American status.

DCFS contends substantial evidence supports the finding, and any error was harmless because nothing in the record suggests that asking more extended family members would bear meaningfully on the ICWA question.

---

[1] Undesignated statutory references will be to the Welfare and Institutions Code.

In light of the facts in the record, which include both mother's and father's denials of affiliation with any Native American tribe; the ongoing contact mother and father had with their respective families, including the maternal grandparents; the fact that inquiries were made of the available grandparents on both sides; and the fact that if the children were Indian children, the parents would have benefitted from a heightened standard of proof before the juvenile court could terminate their parental rights, we conclude additional inquiry of extended relatives would not have yielded information that was likely to bear meaningfully on the question of whether the children are Indian children under ICWA.

Accordingly, any failure to inquire of extended family members was harmless.  We therefore affirm.

## BACKGROUND

We will limit the presentation of facts to those pertinent to the juvenile court's ICWA finding, the sole topic of dispute on appeal.

## A.　L.S.

In 2017, mother lived with her three older children (by another father), the maternal grandparents, and a maternal aunt.  There were two other maternal aunts not residing in the home.  Mother reported she was born in California, was close to her parents and siblings, and had never been in foster care.

In July 2017, L.S. was born testing positive for methamphetamine and opiates, and mother admitted to using heroin throughout her pregnancy.  Mother also admitted to a history of domestic violence with father, who was incarcerated.

The three older children were detained from mother and placed with their father in 2017 and jurisdiction was terminated in January 2019. That family is not part of this appeal.

L.S. was detained from mother and father and placed with the paternal grandmother. A reunification plan was instituted and services offered, but reunification efforts failed.

During four and a half years of proceedings, mother and the maternal grandmother filed four section 388 petitions seeking to have L.S. removed from the paternal grandmother and placed with the maternal grandmother or a maternal aunt. The juvenile court denied mother's final section 388 petition on September 8, 2021, without a hearing. Mother appeals from that order.

On January 27, 2022, the juvenile court terminated parental rights and determined L.S.'s permanent plan to be adoption. Mother and father appeal from that order. We consolidated the two appeals.

**B.     M.H. and D.H.**

Mother gave birth to M.H. in 2018 and D.H. in 2019. Their father is Max H., who is not party to any of these appeals. D.H. tested positive for amphetamine at birth. Both children were detained and initially placed with the maternal grandparents. Mother waived reunification services for M.H. and was denied them for D.H.

On August 31, 2021, mother filed a section 388 petition requesting that M.H. and D.H. be returned to her care, or alternatively, that she be granted reunification services and the children be placed with a maternal aunt. Mother stated she had completed a relapse prevention program, and currently resided in a substance abuse treatment program. She was having weekly visits with the children, and argued it would be in their best

4

interests to have a continuing relationship with her. The juvenile court denied the petition on September 9, 2021, without a hearing. Mother appeals from that order.

On our own motion, we consolidated this third appeal with the prior two for purposes of oral argument and decision.

## C.    Pre-Judgment ICWA Inquiries

### 1.    L.S.

Mother denied Native American ancestry on at least six occasions in the proceedings relating to her six children. Father and the paternal grandmother also denied Native American ancestry.

Both DCFS and the juvenile court had contact with several maternal relatives throughout the cases—including the grandparents, three aunts, a great-aunt, and the great-aunt's daughter—but these individuals were not questioned about the family's heritage.

On July 27, 2017, the juvenile court found that ICWA did not apply to L.S., a ruling it reaffirmed several times over the next four years, often also directing the parents to keep DCFS, their attorneys, and the court informed of any new information on the issue.

### 2.    M.H. and D.H.

Max H., M.H.'s and D.H.'s father, completed an ICWA-020 form on November 26, 2019, in which he denied Native American ancestry.

Based on this and mother's denials, the juvenile court found there was no reason to know that either M.H. or D.H. was an Indian Child under ICWA.

5

## D. Post-Judgment ICWA Inquiries

While briefing was underway in these appeals, we granted the department's requests to consider a DCFS report filed in the M.H. proceedings on November 8, 2022. In it, DCFS reported that the maternal grandparents denied Native American ancestry and stated no one in the family would know better about that than they.

DCFS further reported that both Max H. and his mother (M.H.'s and D.H.'s paternal grandmother) denied Native American ancestry. Neither knew how to contact the paternal grandfather, and both stated he had no Native American ancestry anyway.

We also granted the department's requests for judicial notice of a November 22, 2022 minute order in the M.H. proceedings, in which the court found, based on the aforementioned DCFS report, that DCFS complied with its obligations under ICWA, and no reason existed to believe that ICWA applied to M.H.

On December 8, 2022, the department moved to dismiss as moot mother's appeal regarding M.H. and D.H.

## DISCUSSION

### A. Issue

Mother (joined by father as to the termination of parental rights involving L.S.) contends no evidence in the record indicates DCFS made sufficient inquiry about the children's possible Indian Child status, in derogation of state law (§ 224.2) implementing ICWA and contrary to the requirement that the department make and document such inquiries and any responses. (See Cal. Rules of Court, rule 5.481(a)(5) [burden on child welfare agency to provide detailed requirements of the

6

ICWA have been satisfied is appropriate]; *In re A.M.* (2020) 47 Cal.App.5th 303, 314.)

Specifically, mother contends DCFS should have attempted to question more maternal relatives than simply the maternal grandparents about the children's possible Native American ancestry.  Absent such an inquiry, mother argues, the juvenile court lacked the power to deny her section 388 petitions or terminate her parental rights.  She asks that the court's orders be reversed and the matters remanded for further inquiry into the family's ancestry.

Mother does not contend any ICWA error was made pertaining to the children's paternal relatives, nor that the juvenile court erred on the merits in denying her section 388 petitions or terminating her parental rights as to L.S.  Nor does she oppose our consideration of respondent's post-judgment evidence.

## B.    Legal Principles

An "Indian child" is an unmarried person under 18 years of age who is (1) a member of a federally recognized Indian tribe or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe. (25 U.S.C. § 1903(4) & (8); see § 224.1, subd. (a) [adopting federal definitions], subd. (b) [expanding the age range stated in the federal definition to include persons over 18, but under 21, years of age].)

The juvenile court and DCFS have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to dependency proceedings is or may be an Indian child.  (§ 224.2, subd. (a) [setting forth the "affirmative and continuing duty to inquire"]; Cal. Rules of Court, rule 5.481(a) [same].)

7

The "[i]nquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).)

Under ICWA, the term "extended family member" is "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin or stepparent." (25 U.S.C. § 1903(2).)

In general, we review the correctness of a juvenile court's order terminating parental rights as of the time it was made. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405 (*Zeth S.*).) "This rule reflects an 'essential distinction between the trial and the appellate court . . . that it is the province of the trial court to decide questions of fact and of the appellate court to decide questions of law.' [Citation.] The rule promotes the orderly settling of factual questions and disputes in the trial court, provides a meaningful record for review, and serves to avoid prolonged delays on appeal." (*Ibid*.)

However, Code of Civil Procedure section 909 authorizes a reviewing court to "make factual determinations contrary to or in addition to those made by the trial court." "The reviewing court may for the purpose of making the factual determinations or for any other purpose in the interests of justice, take additional evidence of or concerning facts occurring at any time prior to the decision of the appeal . . . ." (*Ibid*.) As our Supreme Court has directed, however, our authority under Code of Civil Procedure section 909 "should be exercised sparingly," in only a "rare and

8

compelling case," and " '[a]bsent exceptional circumstances, no such findings should be made.' " (*Zeth S.*, *supra*, 31 Cal.4th at pp. 400, 405, italics omitted.)[2]

Respondent essentially concedes that section 224.2 was not followed but argues any error was harmless because as reflected in the post-judgment DCFS report and minute order, a sufficient ICWA inquiry was eventually made of the maternal grandparents, who possessed the best information about whether mother's family had Native American heritage.  We agree.

DCFS's failure to inquire of extended family members does not result in automatic reversal.  (See *In re A.C.* (2022) 75 Cal.App.5th 1009; *In re S.S.* (2022) 75 Cal.App.5th 575; *In re Darian R.* (2022) 75 Cal.App.5th 502.)  The question is whether " 'the probability of obtaining meaningful information is reasonable in the context of ICWA.' "  (*In re Darian R.*, at p. 509.) Information available from extended family members must be both "readily obtainable," and "likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744.)  In making this determination, we reject "a wooden approach to prejudice" (*In re A.C.*, at p. 1017) and refuse to require further inquiry when, based upon the

---

[2] Whether an appellate court may take additional evidence to remedy the failure of a child welfare agency and trial court to comply with the inquiry, investigation, and notice requirements of ICWA is currently under review by our Supreme Court.  (*In re Kenneth D.* (2022) 82 Cal.App.5th 1027, rev. granted Nov. 30, 2022; https://supreme.courts.ca.gov/sites/default/files/supremecourt/default/2022-12/pendingissues-civil%20-%20120922_0.pdf [statement of issues].)

particular circumstances revealed by the record, it is apparent "that additional information would not have been meaningful to the inquiry" (*In re Benjamin M.*, at p. 743).

In *In re Darian R.*, *supra*, 75 Cal.App.5th 502, we found that DCFS's failure to inquire of the children's maternal grandfather and maternal aunt was error, but the error was harmless because both parents denied Indian ancestry, "mother lived with maternal grandfather and aunt during the dependency proceedings, and she was under court order to continue to provide information relevant to ICWA" (*id.* at pp. 509, 510), and it was therefore "unlikely that any further inquiry of family members would have yielded information about Indian ancestry" (*id.* at p. 504).

In *In re S.S.*, *supra*, 75 Cal.App.5th 575, where a mother appealed a termination of her parental rights, we considered whether DCFS's failure to inquire of the maternal grandmother was prejudicial, based on the mother's contention that social workers should have asked the maternal grandmother about the child's tribal affiliation, if any. (*Id.* at p. 582.) We held that DCFS's failure to inquire of the maternal grandmother was harmless because, as the juvenile court placed the child with a foster parent, the mother, the mother's counsel, and the child's counsel, each of whom sought to have the child placed with maternal grandmother, all had "a strong incentive to bring to the court's attention any facts that suggest that [the child] is an Indian child." (*Ibid.*) Specifically, ICWA provides that in placing an Indian child, "preference shall be given, in the absence of good cause to the contrary, to a placement with [¶] . . . [¶] . . . a member of the Indian child's extended family." (25 U.S.C.

10

§ 1915(a) & (b)(i).)  Thus, "[t]heir failure to do so implie[d] that the maternal grandmother [was] unaware of such facts."  (*In re S.S., supra*, at p. 582.)

On the other side, in *In re A.C., supra*, 75 Cal.App.5th 1009, we concluded that DCFS's failure to ask extended family members about possible tribal affiliation *was* prejudicial because the "mother, as a foster care product, may not know her cultural heritage, but her biological relatives may have that information," and "although a detention report indicated [the child] may be an Indian child, the record is devoid of any follow-up on that representation."  (*Id*. at p. 1017.)  In that case, the children were placed with multiple maternal aunts and a maternal cousin, but there was no indication that DCFS interviewed any of these relatives about the child's potential Indian heritage.  (*Id*. at p. 1013.)

Here, the record does not support the conclusion that inquiring of more of mother's extended family than the maternal grandparents would have yielded additional information likely to bear meaningfully on the court's ICWA determination.

Mother informed DCFS on approximately six occasions that she was unaware of any Indian ancestry.  Both father and Max H.—and their available parents—also informed the juvenile court they were unaware of any Indian ancestry on their side.  After finding there was no reason to know the children had Native American ancestry, the juvenile court ordered the parents several times to keep DCFS, their attorneys, and the court informed of any new information on the issue.

Unlike *In re A.C., supra*, 75 Cal.App.5th 1009, where reason existed to doubt that the mother was aware of her cultural heritage because she was a product of foster care (*id*. at p. 1017),

11

mother here had close and regular contact with her relatives before and during the dependency proceedings. Although she resided with or remained in contact with them, neither she nor her attorney disclosed any new information, and at the hearing on terminating parental rights, neither objected when the juvenile court found L.S. was not an Indian child. Thus, the record discloses no reason to suppose the maternal aunts, great-aunt, or cousin had knowledge superior to that possessed by mother or the maternal grandparents such that inquiring of the aunts and cousin would have yielded different information. (*In re Darian R.*, *supra*, 75 Cal.App.5th at pp. 504, 509, 510.)

Additionally, mother and father had a strong statutory incentive to bring to the juvenile court's attention any facts suggesting L.S. had Native American ancestry. When termination of parental rights is sought, the evidence, including expert testimony, must establish beyond a reasonable doubt that the continued custody of an Indian child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child. (25 U.S.C. § 1912(f); § 366.26, subd. (c)(2)(B)(ii).) This heightened burden of proof provided additional incentive for mother, father, and their counsel to bring forward information bearing on whether L.S. was an Indian Child. That they did not do so suggests there was no such information.

Accordingly, we conclude any failure by DCFS to inquire of more extended family members than the maternal grandparents as to the children's potential Indian status was harmless.[3]

---

[3] That said, mother's appeal regarding M.H. and D.H. is not moot because she requested that DCFS make inquiries of all the maternal relatives, not just the maternal grandparents. As discussed, however, such an inquiry was not required.

## DISPOSITION

The orders denying mother's section 388 petitions and terminating parental rights are affirmed.  Respondent's motion to dismiss Appeal No. B315631 is denied.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.

13